IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP,**<br>Appellant,<br><br>v.<br><br>**THE H&K GROUP, INC., ET AL. ,**<br>Appellee. | CIVIL ACTION<br><br><br><br>NO.  16-4080 |

## MEMORANDUM OPINION

Before the Court is the appeal of Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR") from an order by the United States Bankruptcy Court in the Matter of T.H. Properties, LP, et al., Debtor(s) (Bankruptcy Case No. 09-13201).  In 2009, T.H. Properties, L.P. and several of its affiliates (collectively, "THP") filed for bankruptcy and retained MMWR as bankruptcy counsel.  After the close of bankruptcy proceedings, MMWR, THP, and other parties to the case entered into a stipulation (the "Stipulation") wherein MMWR agreed to accept a reduced payment from THP for its total fees and costs.  This appeal concerns the Bankruptcy Court's interpretation of that Stipulation, as set forth in its order dated July 13, 2016 (Docket Item 2478).  For the reasons herein, the Bankruptcy Court's order is affirmed.

**I.      BACKGROUND**

MMWR was employed as counsel to THP, a property developer, in THP's Chapter 11 bankruptcy proceedings between 2009 and 2012.  While retained as THP's bankruptcy counsel, MMWR filed nine interim applications for fees and costs spanning the period of April 30, 2009 through April 30, 2012.  For the first nine interim applications, a total of $3,107,497.18 in fees and costs was preliminarily approved by the Bankruptcy Court.  In MMWR's Tenth and Final Fee Application (the "Final Fee Application"), filed on August 9, 2012, MMWR sought a total final award of $3,148,230.22 for the entire period, which included $40,732.50 for work performed in May 2012.

THP and other parties to the case filed an objection to MMWR's Final Fee Application, arguing that the fees requested were excessive, that MMWR had failed to adequately and efficiently handle the case, and that the timing and manner of payment under the Chapter 11 reorganization plan was vague.  To resolve this objection and determine how MMWR's fees and costs would be paid, the parties entered into a Stipulation, which was approved by the Bankruptcy Court on January 18, 2013.  Paragraph 1 of the Stipulation provides:

> MMWR will agree to reduce its total fee and cost claims against THP from $2.6 million for all pre-bankruptcy, bankruptcy, and post-bankruptcy work for THP to the total sum of $2.325 million, with the said reduction of $275,000 to be applied after receipt by MMWR of $2.325 million, thereby leaving unchanged the present agreed on base number of $2,537,683.40 for MMWR for purposes of calculating the proportional allocation of any future distributions to MMWR and other Plan creditors.  And the said objections are hereby resolved and withdrawn with prejudice.

The Stipulation thereafter provides that, as THPs' real estate units were sold, each sale would generate funds to satisfy MMWR's fees and costs claim "until MMWR receives its full payment of $2.325 million."

In accordance with the Stipulation, THP made payments to MMWR over the course of the next three years.  On February 29, 2016, David Klauder, counsel to THP, sent MMWR a letter enclosing what Klauder described as the final payment of $3,730.32, which together with all of THP's previous payments totaled $2.325 million.  Attached to Klauder's letter was an accounting of THP's payments to MMWR.  The accounting demonstrated that, when THP's pre-bankruptcy and bankruptcy payments to MMWR were included, THP had paid MMWR $2.325 million.

MMWR denied that it had been paid in full and, seeking to enforce the Stipulation, filed a Motion to Reopen the Bankruptcy Case in June 2016.  In that Motion and at oral argument before the Bankruptcy Court, MMWR asserted that the parties intended the $2.325 million figure at ¶ 1 of the Stipulation only to cover accounts receivable at the time the Stipulation was

2

executed – *not* payments already made.  In its order dated July 13, 2016, the Bankruptcy Court granted MMWR's Motion to Reopen for the limited purpose of interpreting the Stipulation.  The Court determined that THP's interpretation accorded with the plain language of the Stipulation and immediately reclosed the case.  It is from this order that MMWR now appeals.

## II.     STANDARD OF REVIEW

MMWR appeals the order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1), which grants the District Court jurisdiction over appeals of final orders from the Bankruptcy Court.  In its appellate role reviewing the decisions of the Bankruptcy Court, the Court generally must "review questions of law de novo, findings of fact for clear error, and exercises of discretion for abuse thereof."  *In re Jevic Holding Corp.*, 787 F.3d 173, 179 (3d Cir. 2015).  Concerning issues of mixed law and fact, the Court must "accept the [Bankruptcy Court's] finding of historical or narrative facts unless clearly erroneous, but exercise plenary review of the [Bankruptcy Court's] choice and interpretation of legal precepts and its application of those precepts to the historical facts."  *Mellon Bank N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal citations omitted).

## III.    DISCUSSION

MMWR raises two issues on appeal: first, whether the Bankruptcy Court erred in finding that the Stipulation was unambiguous; second, whether the Bankruptcy Court erred in ruling against MMWR on the merits of its Motion to Enforce the Stipulation before that Motion was formally filed, and without an evidentiary record.

### 1.    The Bankruptcy Court did not err in finding that the Stipulation was unambiguous

MMWR argues that the Stipulation was both patently and latently ambiguous, and that the Bankruptcy Court erred in not considering parol evidence to resolve the ambiguities in a manner consistent with the parties' intent.  These arguments shall be addressed in turn.

A.  Patent ambiguity

MMWR identifies two alleged patent ambiguities in Stipulation ¶ 1: first, that it is unclear whether the phrase "$2.6 million" refers to paid or unpaid amounts; second, that it is unclear whether the phrase "[MMWR's] claims against THP" refer only to claims for accounts receivable, or also to its claims for paid amounts.

Construing Stipulation ¶ 1 as a whole, it is clear that MMWR's patent ambiguity argument is meritless.  Under Pennsylvania contract law:

> [i]t is firmly settled that the intent of the parties to a written contract is contained in the writing itself.  When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement.  Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract.  Where the contract terms are ambiguous and susceptible of more than one reasonable interpretation, however, the court is free to receive extrinsic evidence, *i.e.* parol evidence, to resolve the ambiguity.  A contract will be found to be ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning.  A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993) (internal citations and quotations omitted).

"A patent ambiguity appears on the face of the contract and is a result of defective or obscure language." *Id*. at 643 (*citing Z & L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (Pa. Super. Ct. 1985)).  Here, the Stipulation contains no defective, obscure, or indefinite language.  It clearly states at ¶ 1 that MMWR agrees to reduce its "total" fee and cost claims from $2.6 million "for all pre-bankruptcy, bankruptcy, and post-bankruptcy work" to the "total sum" of $2.325 million.  The plain language of the Stipulation thus explicitly covers the payments THP made to MMWR prior to the execution of the Stipulation.

B.  Latent ambiguity

MMWR's argument that the Stipulation suffers from a latent ambiguity is similarly unavailing.  MMWR contends that the Bankruptcy Court's conclusion that the $2.6 million figure in Stipulation ¶ 1 ("MMWR will agree to reduce its total fee and cost claims against THP from $2.6 million . . . .") represented both paid and unpaid claims is contradicted by the $3.1 million the Court had previously allowed MMWR in fees and costs.  But as the Bankruptcy Court noted in its July 13 order, the Stipulation resolved not only the objections to MMWR's Final Fee Application, but also MMWR's request for final approval of its nine prior interim applications – all of which, whether paid or not, remained susceptible to modification.  "Because interim awards are interlocutory and often require future adjustments, they are '*always* subject to the court's reexamination and adjustment during the course of the case.'"  *In re Evangeline Ref. Co.*, 890 F.2d 1312, 1321 (*quoting* 2 Collier on Bankruptcy ¶ 331.03 (15th ed.) (emphasis in original); *see also In re Stable Mews Assoc.*, 778 F.2d 121, 123 n.3 (2d Cir. 1985) ("Interim awards are, by definition, not final."); *In re Strand*, 375 F.3d 854, 858 (9th Cir. 2004) (holding that the bankruptcy court did not abuse its discretion by reconsidering interim fee awards as part of its evaluation of the final fee application).  Accordingly, MMWR's contention that the $2.6 million figure could not have represented its total outstanding claims against THP is unpersuasive.  As THP pointed out at oral argument in the instant appeal, the text of the Stipulation indicates that $2.6 million was a negotiated figure representing MMWR's "total fee and cost claims against THP . . . ."

MMWR proffers parol evidence to support its interpretation of the Stipulation, including an affidavit by Mr. Busby, counsel to MMWR at the time the Stipulation was negotiated (the "Busby Affidavit").  The Busby Affidavit sets forth correspondence between the parties during these negotiations and suggests, based on this correspondence, that the parties intended the $2.6 million figure in Stipulation ¶ 1 (which was negotiated down in the Stipulation to $2.325

5

million) to represent accounts receivable only. MMWR argues that because THP had reason to know of its competing interpretation of the Stipulation, THP should be bound by MMWR's interpretation.[1]

The Busby Affidavit was attached as an exhibit to MMWR's Motion to Enforce the Stipulation, which was in turn attached as an exhibit to MMWR's Motion to Reopen the Bankruptcy Case. The Affidavit was, accordingly, before the Bankruptcy Court when it issued its July 13, 2016 order.

Pennsylvania law makes clear that "a claim of latent ambiguity must be based on a 'contractual hook': the proffered extrinsic evidence must support an alternative meaning of a specific term or terms contained in the contract, rather than simply support a general claim that the parties meant something other than what the contract says on its face." *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 96 (3d Cir. 2001) (summarizing Pennsylvania contract law on latent ambiguity). "Furthermore, a proffered alternative meaning for the contractual hook must be reasonable; that is, it must be supported by contractual evidence that goes beyond the party's claim that the contractual hook has a certain meaning, and the interpretation cannot contradict the standard meaning of a term when the parties could have easily used another term to convey this contradictory meaning." *Id*. "A party may use extrinsic evidence to support its claim of latent ambiguity, but this evidence must show that some specific term or terms in the contract are ambiguous; it cannot simply show that the parties intended something different that was not incorporated into the contract." *Id*. at 93.

In *Bohler*, the Court found a latent ambiguity where a facially unambiguous rebate clause – which provided for rebates when the parties made "purchases" – was silent in a particular

---

[1] Appellants have not argued the doctrine of mistake, which permits the admission of parol evidence for the purpose of showing that, by reason of mistake, the written instrument does not express the actual intention of the parties. *See, e.g.*, *Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105 (Pa. Super. Ct. 2006). Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, "[a] motion must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it." Fed. R. Bankr. P. 8013(a)(2)(A). Given that Defendants are represented by counsel, the Court shall not take up the issue of mistake *sua sponte*.

context, namely whether the parties would receive rebates on purchases that were immediately resold to third parties.  Here, by contrast, the Stipulation explicitly covers the dispute at issue.  The interpretation advanced by MMWR contradicts the standard meaning of the terms in ¶ 1 of the Stipulation, when the parties could have easily phrased ¶ 1 differently had they intended to convey MMWR's contradictory meaning.  Accordingly, because MMWR improperly seeks to show that the parties intended a different meaning that was not incorporated into the Stipulation, the Bankruptcy Court did not err in finding that THP's interpretation controlled.

> 2. **The Bankruptcy Court did not err in ruling against MMWR on the merits of its Motion to Enforce the Stipulation**

MMWR asserts that proper resolution of this dispute required a full exploration of the parties' intent in executing the Stipulation, including presentation and consideration of parol evidence.  MMWR points out that the Bankruptcy Court did not permit discovery or presentation of extrinsic evidence of the parties' intent.  As discussed in greater detail above, however, the Bankruptcy Court was not required to consider extrinsic evidence or further develop the factual record because it determined that the language of the Stipulation was not ambiguous.  *Bohler*, 247 F.3d at 93, 96.

MMWR cursorily suggests in its briefing, albeit without reference to authority, that by ruling on the Motion to Enforce the Stipulation after a hearing on the Motion to Reopen only, the Bankruptcy Court's determination was not "made in compliance with the notice and opportunity to be heard requirements of the Bankruptcy Rules, for example Bankruptcy Rule 9014, and due process." (ECF No. 7 at 18, n.11.)

Aside from pointing to Rule 9014 and the doctrine of due process, MMWR has not referred to any authority to support its assertion that the proceedings in the Court below were improper.  Rule 9014 states, in relevant part: "In a contested matter not otherwise governed by

7

these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).

Judge Raslavich held an oral argument on MMWR's Motion to Reopen the Bankruptcy Case on July 13, 2016 – over a month after the Motion was filed on June 9, 2016.  The Motion to Enforce the Stipulation was attached as an exhibit to the Motion to Reopen, and the Busby Affidavit was attached to the Motion to Enforce.  As discussed in greater detail *supra*, because the Court determined that the Stipulation was not ambiguous, it was not required to consider extrinsic evidence to assist in its interpretation.  *Bohler*, 247 F.3d at 93, 96.  Accordingly, MMWR's argument that the Bankruptcy Court violated its procedural obligations is unavailing.

For the reasons herein, the Bankruptcy Court's July 13, 2016 order is affirmed.


Dated: March 24, 2017

                                                    **BY THE COURT:**


                                                    /s/ Wendy Beetlestone, J.

                                                    **WENDY BEETLESTONE, J.**